**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Winthrop Resources Corporation,
a Minnesota corporation,

Plaintiff,

v.

Spearhead System Consultants (US),
Ltd., a New York corporation;
Elizabeth Vermeulen; and Christopher Fynn,

Defendants.

Civil No. 01-1004 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Barbara P. Berens, Esq. and Erin K. F. Lisle, Esq., Kelly & Berens, 3720 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402, counsel for Plaintiff.

Christopher R. Morris, Esq. and Mark D. Covin, Esq., Bassford, Lockhart, Truesdell & Briggs, P.A., 3550 Multifoods Tower, 33 South 6th Street, Minneapolis, Minnesota 55402 and Elliott M. Epstein, Esq., 488 Madison Avenue, New York, New York 10022-5910, counsel for Defendants.

---

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 24, 2002, pursuant to Plaintiff's Motion for Summary Judgment. By its complaint, Plaintiff alleges that Defendant failed to provide timely written notice to terminate a lease of computer equipment; and, as a result and pursuant to the evergreen clause within the lease agreement, the lease contract was automatically renewed for another year. Plaintiff further alleges that Defendant has failed to pay under the renewed lease despite retaining control of the leased equipment. Defendant contests the current motion, contending that by the conduct of a sales agent Plaintiff waived it contractual right to enforce the provision that notice of termination be both timely and in writing and that by that same conduct, Plaintiff is estopped from enforcing the same

MAY 29 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 29 2002
DEPUTY CLERK

provision. For the reasons set forth below and those expressed by the Court at hearing, the Court grants Plaintiff's motion in its entirety and enters judgment in favor of Plaintiff.

## Background

Plaintiff Winthrop Resources Corporation ("Winthrop") is a Minnesota corporation engaged in the business of leasing computer and other electronic equipment. Defendant Spearhead System Consultants (US), Ltd. ("Spearhead") is a New York corporation with its primary place of business located in New York. Plaintiff asserts that Defendant Elizabeth Vermeulen ("Vermeulen") is the president of Spearhead, and Defendant Christopher Fynn ("Fynn"), is a former president of Spearhead.[1] Neither individual defendant is a resident of Minnesota. At the time the Lease Agreement at issue was entered into, Vermeulen and Fynn were married.

In 1997, Winthrop and Spearhead entered into a Lease Agreement for computer equipment. At the same time, Vermeulen and Fynn executed guarantees of Spearhead's obligations under the Lease Agreement. The Lease Agreement was the standard agreement used by Winthrop and contained the following relevant provisions. By an opening paragraph on the first page, the Lease Agreement specifically states that the leased equipment to be delivered would be identified on accompanying lease schedules and such schedules were incorporated into the Lease Agreement by reference. The first provision of the Agreement provided that the initial term of the agreement would be set forth in the lease schedules and that the lease would automatically renew for a year at the close of the initial term unless written notice of termination

---

[1] In Plaintiff's memorandum in support of the current motion, Plaintiff made the assertion with respect to Defendant Fynn "on information and belief." Nonetheless, the accuracy of this assertion is not determinative of the Court's decision in this matter.

was provided 120 days prior to the end of the initial term. The "Commencement Date" of the lease was defined in the second paragraph of the Agreement as the 1st of the month following the installation date for each item of equipment identified on the lease schedules. The Agreement contained an integration clause, a choice of law provision designating Minnesota state law, and a provision prohibiting any oral modification of the Agreement.

The parties agree that the Initial Term of the Lease Agreement was scheduled to expire on March 31, 2001. Accordingly, either party could terminate the lease at the end of the initial term by providing written notice to the other party by December 2, 2000.

In August 2000, William Van Atten, Spearhead's chief financial officer, reviewed the Winthrop Lease Agreement with Tim Finkenbinder, in-house counsel for Spearhead, to determine how to proceed as the three-year term came to a close. Van Atten purportedly was concerned that the Agreement provided for no end-of-lease options, such as a buy-out option, but rather provided only for termination or renewal. Moreover, Van Atten and Finkenbinder wanted to confirm the end date of the initial term in light of the numerous release schedules and the original and amended Lease Agreements. With these two concerns in mind, Van Atten and Finkenbinder both contacted Frank Gabriele, the Winthrop sales representative responsible for the Spearhead account.

On August 2, 3, and 8, 2001, Finkenbinder contacted Gabriele to determine the termination date. On August 3rd and 8th, Gabriele documented that he and Finkenbinder discussed the 120 day notice requirement, the April 1998 commencement date, and Spearhead's desire to keep some, but not all, of the leased equipment. On September 11, 2001, Spearhead's controller contacted Gabriele again to determine the termination date, and Gabriele documented

this inquiry in addition to verification that billing would continue and that Spearhead desired to keep some, but not all, of the leased equipment.

On September 12, 2001, Van Atten spoke with Gabriele to inquire about alternative lease-end options and to inform Winthrop that Vermeulen and Fynn were divorcing. Van Atten told Gabriele that Spearhead wanted to terminate the current lease because the equipment was no longer worth the required lease payments, and Gabriele purportedly responded that Winthrop's general practice was not to offer lease-end options, but to renegotiate a new lease. Van Atten maintains that Gabriele agreed to provide a new lease proposal, but would need Spearhead financial records. Gabriele documented that Van Atten represented the 1999 and 2000 financial records as available, but weak. The next communication documented by Gabriele is on October 9, 2001, regarding late payments for September and October.

Van Atten represents that Gabriele never got back to him with any new lease proposal despite Van Atten's repeated requests throughout September, October, and November 2001. No evidence of the requests other than the above-communications documented by Gabriele have been presented to the Court. Van Atten left the employ of Spearhead on November 30, 2000.

Before leaving Spearhead, Van Atten informed Nick Varriale and Rachel Pierre-Pierre of Spearhead about his discussions with Gabriele. In December 2001, after the date for notice of termination, Gabriele documented communications with Varriale and Pierre-Pierre about the termination date, the possibility of buy-outs, and the desire to retain the computer equipment. Gabriele further documented that he repeatedly clarified that no buy-out or renegotiation could occur until Winthrop received updated financial documents from Spearhead. Gabriele's notes also indicate that Finkenbinder left the employ of Spearhead in October 2001.

Spearhead did not provide written notice of termination of the Lease Agreement and, as such, the Agreement was automatically renewed to expire March 31, 2002. Under relevant provisions of the Agreement and the lease guarantees, Winthrop now seeks payment of past due monthly lease charges, accelerated lease payments, sales tax, late charges, and costs, including attorney's fees.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations

or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

The parties agree that the explicit language of the Lease Agreement required that Spearhead notify Winthrop in writing by December 2, 2001, of its decision to terminate the Agreement at the end of the initial term. The parties further agree that Spearhead did not meet that burden. Defendants do not dispute the validity of the guarantees executed by Vermeulen and Fynn, but for the extent that their arguments of waiver and estoppel may apply. However, Defendants maintain that it was not required to meet that burden because Winthrop waived its right to enforce the notice of termination provision and, further, that Winthrop should be estopped from enforcing that same provision because of Gabriele's conduct. As stated at hearing, the Court disagrees.

Defendants' argument that Winthrop waived its right to enforce the notice of termination provision is without merit. The Lease Agreement contains a provision, Paragraph 25, which explicitly states that: "No provision of this lease Agreement or any Lease Schedule shall be deemed waived, amended, or modified by either party unless such waiver, amendment, or modification is in writing and signed by each of the parties hereto." In general, a written contract may be varied or rescinded by oral agreement of the parties even if the contract contains a provision barring oral modification. *See Larson v. Hill's Heating & Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777, 781 (Minn. Ct. App. 1987) (citing 6 *Corbin on Contracts* § 1295, at 206 (1962); *Lamberton v. Connecticut Fire Ins. Co.*, 39 N.W. 76 (Minn. 1888); and *Goshey v. ITT Life Ins. Corp.*, 590 F. 2d 737, 740 (8th Cir. 1979) (applying Minnesota law)). That said, however, the Court finds, as a matter of law, that no reasonable trier of fact could determine that

Winthrop had waived its right to timely notice of termination. The evidence shows only that Winthrop may have been willing and able to negotiate a new lease, but that such negotiations did not proceed for lack of up-dated financials and timely follow-up by Spearhead once Van Atten left the company. While the Court can conceive of certain circumstances where a valid waiver could be found, no such circumstances are present here.

Defendants' argument of estoppel is equally without merit. In order to establish estoppel, a party must show: (1) that Winthrop made promises or inducements; (2) that Spearhead reasonably relied upon such promises or inducements; and (3) that Spearhead will be harmed if estoppel is not applied. *See Drake v. Reile's Transfer & Delivery, Inc.*, 613 N.W.2d 428, 434 (Minn. Ct. App. 2000) (citing *Hydra-Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 919 (Minn.1990)). Accepting the Van Atten affidavit as true for purposes of this motion, the Court considers the following facts. Upon Van Atten's statement that Spearhead was interested in alternative lease-end options, Gabriele stated that he would work on a proposal for a new lease, but that he needed to have updated financial records from Spearhead. Spearhead concedes that it never provided the requested records. Moreover, once Van Atten left the employ of Spearhead, no Spearhead employee followed up with Winthrop until after the notice of termination date had passed.

Negotiation of a new lease and the continuation of an existing lease are not mutually exclusive. Indeed, a trier of fact could easily conclude that Spearhead's failure to provide the requested financials was, in itself, an abandonment of the negotiation process in which the parties had purportedly engaged. Despite the explicit requirement for written notice of termination, Spearhead never provided such written notice to Winthrop. Under the facts of this case, the Court finds that, as a matter of law, no reasonable trier of fact could find that Spearhead

reasonably relied on Gabriele's statements and conduct to conclude that the initial lease had been terminated and therefore was required to comply with the notice provision in order to terminate the lease at the close of the initial term.

**3. Conclusion**

As the Court ruled at hearing, the Court finds that Winthrop neither waived nor acted in such a way to prevent it from enforcing the provision requiring timely written notice of termination of the lease. The provision was explicit, and Winthrop's actions, in this case, did not rise to the level at which Spearhead could have reasonably relied to conclude that the notice provision was no longer to be enforced. For the reasons stated above, the Court finds that summary judgment is appropriately entered in favor of Winthrop and that the guarantees of Vermeulen and Fynn are rightly enforced.

That being said, however, the Court finds it worthy of note that such renewal or evergreen clauses as was in play in the instant case are provisions with which parties should operate with care. It is of particular concern to the Court that the standard use of such a clause by a leasing corporation such as Winthrop may be more likely to impact smaller businesses than larger corporations more capable of affording their own equipment. In the Court's opinion, it would be a better practice to ensure that both parties are explicitly informed of the termination date and the date by which notice of termination must be given so that the parties renew such leases knowingly and willingly. Such awareness by both parties would serve to avoid the expense of valuable resources necessary to litigate a claim such as the current suit and would encourage the continued pursuit of good faith negotiations and business relationships. While such concerns are significant to the Court in evaluating the instant case, the Court concludes that, given the circumstances in this case, no finding could be made to support an application of

waiver or estoppel.

For the reasons stated, **LET IT BE ORDERED** THAT:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**;

2. Judgment is entered against Defendant in the amount of $140,564.31, not including attorney's fees and costs incurred in this action to be determined upon the Court's receipt of an affidavit from Plaintiff; and

3. Plaintiff is respectfully directed to submit to the Court an affidavit of attorney's fees and costs incurred in this action.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 29, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

*Featured Speakers Include:*

**District of Minnesota**

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

**United States Bankruptcy Court**
**District of Minnesota**

Judge Robert J. Kressel

Application Pending for 7.5 CLE Credits including
2 Ethics and 1 Bias Credit

The Minnesota Chapter of the Federal Bar Association
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

MINNESOTA CHAPTER OF
THE FEDERAL BAR
ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002**
**8:00 am—5:15 pm**

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| **7:30-8:00** | **Registration** |
| **8:00-8:15** | **Opening Remarks and Welcome, *Judge Ann D. Montgomery*** |
| **8:15-9:00** | **Securities Law Issues in the Wake of Enron, *Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| **9:00-9:45** | **Current Issues in Employment Law, *Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| **9:45-10:00** | **Morning Break** |
| **10:00-10:45** | **Current Initiatives in the U.S. Attorneys' Office, *Tom Heffelfinger (U.S. Attorneys Office)*** |
| **10:45-11:45** | **Discovery Disputes: Professionalism in the Practice of Law?, *Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| **11:45-12:45** | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| **12:45-1:30** | **The Clerk's Office Can Be Your New Best Friend, *Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| **1:30-2:15** | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How, *Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| **2:15-3:15** | **Issues in the Wake of 9/11: Racial Profiling -- *Daniel M. Scott (U.S. Federal Public Defenders' Office)*; Response by the Department of Justice -- *Tony Brown (U.S. Attorneys Office)*** |
| **3:15:3:30** | **Afternoon Break** |
| **3:30-4:15** | **Update on Technology Tools for Litigating in Federal Court, *Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| **4:15-5:15** | **Ethics in "Real Life" Practice Situations, *Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ____________________

Firm/Employer ____________________

Address ____________________

____________________

Phone ____________________

E-Mail ____________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building